UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SPYROS COPE., <br><br>                Plaintiff, <br> v. <br><br> WAL-MART STORES EAST, LP., <br><br>                Defendant. | 3:15-cv-01523 (CSH) |

**RULING ON DEFENDANT'S MOTION TO DISMISS
THE SECOND AND THIRD COUNTS OF PLAINTIFF'S COMPLAINT**

<u>HAIGHT</u>, Senior District Judge:

      Plaintiff Spyros Cope brings this action against his former employer, Defendant Wal-Mart Stores East, LP ("Wal-Mart"), in relation to what he alleges was his unlawful termination.  Plaintiff filed the action in Connecticut Superior Court on September 18, 2015.  Defendant thereafter removed the case on October 20, 2015, invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Plaintiff brings statutory claims under the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60(a)(1) (Count I), and Conn. Gen. Stat. §§ 31-51x and 31-51z (Count IV).  Plaintiff also brings common law claims for wrongful discharge (Count II) and breach of the implied covenant of good faith and fair dealing (Count III).  Defendant has moved for partial dismissal seeking to dismiss Plaintiff's common law claims, Counts II and III.  Doc. 12.  This Ruling resolves that motion.

**I.**      **Background**[1]

      Plaintiff, a black male, was employed at Wal-Mart's store in Norwalk, CT from September

---

[1] The facts recounted are derived solely from the allegations in Plaintiff's complaint.

2000 until his termination on April 23, 2014. Compl. ¶¶ 4, 11. Plaintiff was promoted to an Assistant Manager position in 2007 and was, at all times, an "exemplary and dedicated employee." *Id.* ¶¶ 12, 15. In fact, during the first thirteen years of his employ at Wal-Mart, Plaintiff had never received a single poor performance review, nor had he been warned about any issues as to his job performance. *Id.* ¶ 16; *see also id.* ¶ 39 ("[t]hroughout [Plaintiff's] employment at [Defendant], he satisfactorily performed all job duties assigned to him").

This changed when, during the latter portion of 2013, Wal-Mart began to seek changes in the racial composition of the Norwalk store's staff, of which the majority were black. *Id.* ¶ 17. In November 2013, District Manager La'shion Robinson informed store management that "not enough white people work at the store." *Id.* ¶ 18. Robinson's proposed solution was that management should make efforts to "hire more white people." *Id.* Robinson repeated similar statements through February 2014 "between ten and twenty times."[2] *Id.* ¶ 19. Defendant soon obliged, firing the black manager of the Norwalk store on or about November 11, 2013. *Id.* ¶ 21. In addition, "two black employees were terminated and two quit because of the racist remarks." *Id.* ¶ 35.[3] No white employees were fired during this time. *Id.* ¶ 36. Further, "[o]n or about December 16, 2013, the entire remaining management team [at the Norwalk store]," including Plaintiff, "all of whom were black, was placed on performance improvement plans." *Id.* ¶ 22.

As part of the performance improvement plan, Plaintiff was forced to undergo "coaching" on the manner in which he performed his duties and managed his employees. *Id.* ¶¶ 23-24. This was

---

[2] Plaintiff acknowledges that no such comments were made by Robinson to him between February 2014 and his termination on April 23, 2014. *Id.* ¶ 34.

[3] It is unclear from the Complaint whether these "two black employees" includes the black manager fired on November 11, 2013.

the first time that Plaintiff received coaching of any kind. *Id.* ¶¶ 24, 33(ii). Plaintiff lodged complaints as to the coaching process with regional management, but his coaching only increased. *Id.* ¶ 25. This was despite the fact that Plaintiff "complied with all coaching suggestions made to him while on the performance review plan," and "committed no 'misconduct' related to his coachings." *Id.* ¶¶ 33(iv),(v). However, during a March 22, 2014 performance review, Plaintiff was told he still needed improvement, and was ultimately told that he might remain under review through the end of 2014. *Id.* ¶¶ 26-28. Management's critiques of Plaintiff's performance were not justified. *Id.* ¶ 29.

On April 12, 2014, Plaintiff was involved in an incident at the Norwalk store. On that day, the store's asset protection associate told Plaintiff that he was investigating a potential larceny. *Id.* ¶ 32. Upon rendering assistance, Plaintiff recognized the suspect as a persistent shoplifter, who immediately acknowledged that "I can steal from this store if I want to!" *Id.* ¶¶ 32(iii), (iv). Plaintiff told the shoplifter that police officers were on their way. *Id.* ¶ 32(v). The shoplifter than initiated physical contact with Plaintiff, who used defensive tactics to detain the shoplifter and escort him to the store manager's office. *Id.* ¶¶ 32(vi)-(vii). The shoplifter thereafter struck Plaintiff in the face multiple times with a closed fist and wrestled Plaintiff to the floor. *Id.* ¶ 32(viii). Ultimately, three customers intervened to stop the assault. *Id.*

Plaintiff's actions during the April 12, 2014 incident were all consistent with Defendant's policies and procedures, which authorize those in Plaintiff's employment position to use "physical redirection, and restraint" to detain suspected shoplifters. *Id.* ¶¶ 32(vii), (xvi)-(xix).[4] Following the

---

[4] Plaintiff alleges in the alternative that "to the extent [Wal-Mart]'s policy was violated, such a violation was minor and did not warrant a termination." *Id.* ¶ 32(xx).

incident, on the recommendation of his family physician, Plaintiff requested, and received, three days off from work. *Id.* ¶ 32(xi). On his return, Plaintiff was "immediately asked to submit to a drug test . . . [for] the first time in his career."[5] *Id.* ¶ 32(xii). The drug test was negative. *Id.* ¶ 32(xiii). For his actions, the shoplifter was charged with assault, breach of peace, and larceny. *Id.* ¶ 32(x). Plaintiff was identified as the victim in the criminal case. *Id*.

Nevertheless, on April 23, 2014, Plaintiff was terminated by Wal-Mart. *Id.* ¶ 30. Defendant provided Plaintiff two causes for his termination. *First*, Defendant claimed Plaintiff violated Wal-Mart's Investigation and Detention of Shoplifters policy through his actions on April 12, 2014. *Id.* ¶ 31. In fact, Plaintiff was told by Wal-Mart's Asset Protection District Manager that "what he did was just like stealing and that he might as well have stolen from the store." *Id.* ¶ 32(xv). Plaintiff believes that he was the only employee ever terminated for violating the Investigation and Detention of Shoplifters policy during his time of employment at Wal-Mart. *Id.* ¶ 38. *Second*, Defendant claimed that Plaintiff was terminated for "Misconduct with Coachings." *Id.* ¶ 33(i).

At the core of his complaint, Plaintiff alleges that these justifications were pretextual, and that race was Defendant's motivating factor for the adverse employment action. *Id.* ¶ 43. Plaintiff also claims that Defendant's termination was wrongful in that it was in violation of Connecticut public policies related to crime victims and safe workplaces.

## II.   Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[5] Plaintiff's complaint later states that Wal-Mart "subject[ed] him to random drug tests," *id.* ¶ 37, but makes no specific mention of any other drug test other than the one following the April 12, 2014 incident.

("*Iqbal*") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*")). This pleading standard creates a "two-pronged approach," *Iqbal*, 556 U.S. at 679, based on "[t]wo working principles, " *id*. at 678.

First, although a complaint need not include detailed factual allegations, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"*Id.* (quoting *Twombly*, 550 U.S. at 557. "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id*. (quoting *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679.

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. This "'facial plausibility" prong requires the plaintiff to plead facts "allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Importantly, the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

### III.     Discussion

Defendant moves only to dismiss Counts II and III of Plaintiff's complaint. Count II is a common law claim for an alleged wrongful discharge in violation of public policy. Count III is a common law claim for an alleged breach of the implied covenant of good faith and fair dealing. Although Count II sounds in tort and Count III sounds in contract, the parties correctly agree that "the analysis of [these two] claims . . . are identical." Doc. 18, at 8 n.2; Doc. 13, at 6-8. The Connecticut Supreme Court has held that "a cause of action for wrongful discharge in contract for violation of the implied covenant of good faith and fair dealing . . . is coterminous with, and extends no further than, a cause of action for wrongful discharge in tort." *Battista v. United Illuminating Co.*, 10 Conn. App. 486, 495 (Conn. App. 1987) (citing *Magnan v. Anaconda, Indus., Inc.*, 193 Conn. 558, 572 (1984)). The Court turns to that analysis now.

Connecticut has long held that "an employer and employee have an at-will employment relationship in the absence of a contract to the contrary," which means that "both parties [have] the right to terminate the relationship for any reason, or no reason, at any time without fear of legal liability." *Thibodeau v. Design Grp. One Architects, LLC*, 260 Conn. 691, 697-98 (2002) (internal quotation omitted). However, "[b]eginning in the late 1950s, . . . courts began to carve out certain exceptions to the at-will employment doctrine, thereby giving rise to tort claims for wrongful discharge." *Id.* at 698. One such notable and relevant exception was established by *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471 (1980). In *Sheets*, the Connecticut Supreme Court "recognize[d] an exception to the traditional rules governing employment at will so as to permit a cause of action for wrongful discharge where the discharge contravenes a clear mandate of public policy." *Id.* at 473. The Connecticut Supreme Court later clarified that the public policy serving as an exception

to the at-will employment doctrine "refer[s] generally to violations of public policy as expressed in explicit statutory or constitutional provisions, or judicial decisions." *Faulkner v. United Techs. Corp., Sikorsky Aircraft Div.*, 240 Conn. 576, 585 (1997).

The parties therefore focus their arguments largely on whether Plaintiff has sufficiently identified a public policy allegedly violated by Wal-Mart that is grounded in a statute, constitution, or judicial decision. Plaintiff's primary argument is that his termination contravened "Connecticut's public policy protecting victims of crime." Compl. ¶ 42. In furtherance of that argument, Plaintiff points in his complaint to ten separate statutory and constitutional sources that purportedly aim to protect crime victims. *Id.* Defendant, for its part, argues that none of those sources of authority are directly on-point to the case at bar: namely, protecting victims of crimes within the context of the "employer-employee relationship." Doc. 13, at 8.

In focusing their arguments on whether a relevant public policy exists, the parties largely omit significant analysis as to an essential element of Plaintiff's claim: that there be some interrelation between the discharge and the alleged public policy violation. As stated by the Connecticut Supreme Court,

> [W]e note our adherence to the principle that the public policy exception to the general rule allowing unfettered termination of an at-will employment relationship is a narrow one that is *only to be invoked when the reason for the employee's discharge involves impropriety derived from some important violation of a public policy*.

*Parsons v. United Techs. Corp., Sikorsky Aircraft Div.*, 243 Conn. 66, 79 (1997) (emphases added) (internal quotations and alterations omitted); *see also Bonaguide v. Reg. Sch. Dist. No. 6*, 2013 WL 1849521, at *6 (Conn. Super. Apr. 16, 2013) ("Under the *Sheets* doctrine, a plaintiff must demonstrate a connection or nexus between his discharge and the alleged violation of public

policy"). Further, "[t]o prevail on [a] claim under the *Sheets* exception, the plaintiff has the burden of pleading and proving that his dismissal occurred for a reason violating public policy." *Li Li v. Canberra Indus.*, 134 Conn. App. 448, 454 (Conn. App. 2012); *see also Bonaguide*, 2013 WL 1849521, at *6 ("It is not enough for the plaintiff to show that the employer was engaged in activities or conduct that violated public policy. . . . [T]he plaintiff must show that his discharge was because of, or related to, that public policy violation.").

Plaintiff's only allegation to this effect is the bare statement that "Defendant punished Plaintiff for being the victim of a crime." Compl. ¶ 41. However, such a "threadbare recital[] of a cause of action's elements, supported by [a] mere conclusory statement[]," is insufficient to sustain a cause of action. *Iqbal*, 556 U.S. at 663. Plaintiff alleges no other facts demonstrating that Wal-Mart's decision to terminate him was in any part related to his status as a victim. At best, he alleges that (i) public policy favors protection of crime victims, (ii) he is a crime victim, and (iii) he was terminated. Even accepting each to be true, Plaintiff's claims fail—he simply does not sufficiently allege that he was terminated *because of* any effect related to his status as a crime victim.[6]

Nor can the Court infer from any of the allegations that Plaintiff did present that the decision to terminate him was in any part motivated by his status as a crime victim. Plaintiff has proffered

---

[6] Under Plaintiff's theory, a cause of action for unlawful termination would seem to lie whenever any criminal victim was terminated, regardless of the proffered justification. In other words, status as a crime victim would be a shield against any and all termination. This is a bridge too far. For example, suppose Plaintiff were to have maliciously set fire to the store the week after the shoplifting incident and were terminated for same. Surely that would impose a burden on Plaintiff despite his status as the victim of a crime. However, Plaintiff would not be able to claim "I'm a crime victim, and Connecticut protects crime victims, thereby firing me is unlawful." Plaintiff would have to establish that it was the effect of his victimhood—and not just his arson—that caused his termination. This exercise in *reductio ad absurdum* simply clarifies that a plaintiff must demonstrate some causal connection between the public policy concern and the plaintiff's termination. Plaintiff has not alleged that here.

no allegations regarding any concrete burden that Wal-Mart perceived in light of Plaintiff's victimhood.[7] The Court notes that this is in contrast to his allegations as to Wal-Mart's racial motivation. Plaintiff specifically alleged that Wal-Mart felt the need to have more white employees, and thus, from that perspective, Wal-Mart was burdened by retaining the services of black employees. One could imagine a burden placed on an employer if an employee was a crime victim. For example, perhaps an injury suffered during the crime limits the employee's mobility, or the employee must take certain time off of work to testify in criminal proceedings related to the incident. Were Plaintiff to have alleged that Wal-Mart terminated him in light of one of those burdens, his theory might have merit. Here, however, Plaintiff makes no such allegations.

Rather—accepting the allegations as true—Wal-Mart relied on the incident as a pretext to further its plan to eliminate black employees from its workforce. If true, Plaintiff's Count I for unlawful employment discrimination certainly lies. However, Counts II and III are unrelated to Wal-Mart's alleged race-based motivations. Rather, they rely principally on the claim that Plaintiff was wrongfully terminated by Wal-Mart due to the effects created by his status as the victim of a crime. As discussed, such allegations are nowhere present in the Complaint. In sum, Plaintiff alleges not a single fact that would warrant a logical inference that his termination was even indirectly motivated by the fact that he was the victim of a crime. This is fatal to his common law counts premised on

---

[7] The closest Plaintiff gets to asserting a nexus between his termination and the public policy he invokes is when he argues in his brief that Wal-Mart terminated him because it did not want to "concern itself with" Plaintiff's rights as a victim "before those rights kicked in." Doc. 18, at 19. *First*, it's unclear why those rights did not "kick in" immediately following the April 12, 2014 incident. *Second*, this argument is nowhere in the complaint. *Third*, more fundamentally, Plaintiff alleges no facts that would support this argument—*i.e.*, he nowhere alleges facts demonstrating Wal-Mart's motivation was a pre-emptive strike against Plaintiff's invocation of his rights as a victim.

the theory that his discharge was violative of public policy with respect to crime victims.[8]

Nor can Plaintiff proceed on his claim that his discharge contravened the public policy embodied in Conn. Gen. Stat. § 31-49. Section 31-49 places a duty on employers to provide employees "a reasonably safe place in which to work." As with his argument as to his status as a crime victim, Plaintiff's § 31-49 argument also fails to allege any connection between the alleged public policy violation and his termination. A wrongful discharge claimant under this theory alleges as a threshold that he was subject to unassumed risks at his place of employment. The claimant then asserts that the employer terminated him or her in light of what the employer determined to be an improper reaction to being subjected to such dangers. For example, in *Parsons*, 243 Conn. 66, Plaintiff was terminated because he refused his employer's request that he be relocated to Bahrain, a country which was at the time embroiled in military conflict. Here, Plaintiff makes no allegation that Wal-Mart's decision to terminate him was related to an attempt by Wal-Mart to subject him to an unsafe working condition. In fact, if anything, the Complaint seems to indicate that Wal-Mart was concerned that Plaintiff took on *too much* physical risk during the April 12, 2014 incident. *See* Compl. ¶¶ 32(xvi)-(xix) (the Complaint's affirmative efforts to demonstrate that Plaintiff was in fact one of the "authorized associates" entitled by store policy to investigate, redirect, and restrain shoplifters).[9]

---

[8] Therefore, the Court need not address the principal question addressed in the parties' briefs: whether Connecticut would even allow a wrongful discharge claim to proceed where a termination decision *was* related to an employee's status as a crime victim.

[9] To the extent Plaintiff would argue that the Asset Protection District Manager's statement that "what [Plaintiff] did was just like stealing," Compl. ¶ 32(xv), demonstrates Wal-Mart fired Plaintiff for doing too little to stop the shoplifter, the argument would fail. Although the impetus for such a statement is far from clear, as alleged, it could not have meant that Wal-Mart wanted Plaintiff to do more to stop the shoplifter. Plaintiff did, in fact, stop the shoplifter.

Plaintiff's § 31-49 argument also fails for a more basic reason: Plaintiff nowhere even alleges that Wal-Mart provided him a legally unsafe place to work. *See Parsons*, 243 Conn. at 86 ("It remains the burden of the employee who contests his or her discharge as a violation of the safe workplace public policy to prove that the condition or situation in which the employee was directed to work posed an objectively substantial risk of death, disease or serious physical harm.").[10] Moreover, Plaintiff was required to demonstrate that the dangers he was directed to face were "not contemplated within the scope of the employee's duties." *Id.* at 80; *see id.* at 80 n.17 ("some types of employment have inherent risks that the employee assumes in accepting such employment"). Plaintiff makes no allegations that he was subject to unsafe duties for which he did not assume responsibility. In fact, Plaintiff's allegations make clear that he assumed the risks involved in detaining shoplifters. *See* Compl. ¶¶ 32(xvi)-(xviii). In assuming the ability to use force against shoplifters—and electing to thereafter use such force—Plaintiff cannot say that reactive force being used against him was a risk that he did not assume in accepting such employment. Plaintiff has thereby failed to allege that any of Wal-Mart's actions conflicted with the public policy envisioned by § 31-49. It follows as a matter of course that Plaintiff cannot thereby succeed on a claim that his termination was unlawfully in contravention of that public policy. Plaintiff fails to allege that his termination was related to a supposed failure to maintain a safe workplace. His § 31-49 theory must be dismissed.

---

[10] Of note is that Plaintiff made no allegations that his working conditions were unsafe other than the fact itself that he was injured on the job. Plaintiff thereby seems to believe that the mere fact that he was hurt while working is in and of itself sufficient to demonstrate that the public policy behind § 31-49 was violated. This is not the case.

### IV.     Conclusion

In light of the foregoing, Plaintiff fails to state a claim for wrongful discharge in violation of public policy or breach of the covenant of good faith and fair dealing.  Defendant's partial motion to dismiss is therefore GRANTED, and Counts II and III of Plaintiff's Complaint are DISMISSED.

**It is SO ORDERED.**

**Dated: New Haven, Connecticut
        June 27, 2016**

                                                                */s/ Charles S. Haight, Jr.*
                                                                **Charles S. Haight, Jr.
                                                                Senior United States District Judge**