## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

SPYROS COPE,

          Plaintiff,

v.

WAL-MART STORES EAST, LP,

         Defendant.

3:15-cv-01523 (CSH)

**JUNE 28, 2017**

## RULING ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### HAIGHT, Senior District Judge:

Plaintiff Spyros Cope brings this action against Defendant Wal-Mart Stores East, LP ("Wal-Mart"), his former employer. Plaintiff alleges that he was improperly terminated from his job as an assistant store manager at Wal-Mart Store #3547 located in Norwalk, Connecticut based on his race. Plaintiff filed the action in Connecticut Superior Court on September 18, 2015. Defendant thereafter removed the case on October 20, 2015, invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Plaintiff brings statutory claims under the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a)(1) (Count I), and Conn. Gen. Stat. §§ 31-51x and 31-51z (Count IV). The Court previously dismissed Plaintiff's common law claims for wrongful discharge (Count II) and breach of the implied covenant of good faith and fair dealing (Count III). *Cope v. Wal-Mart Stores East, LP*, No. 3:15-cv-01523, 2016 WL 3561847 (D. Conn. June 27, 2016). Defendant now moves for partial summary judgment [Doc. 31] as to Plaintiff's first claim for unlawful termination. This Ruling resolves that motion.

# I.     Standard of Review

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  If, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," then summary judgment is appropriate.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party must "demonstrate the absence of any material factual issue genuinely in dispute" to be entitled to summary judgment.  *Am. Int'l Grp., Inc. v. London Am. Int'l Corp.*, 664 F.2d 348, 351 (2d Cir. 1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319-20 (2d Cir. 1975)) (internal quotation marks omitted).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[I]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute concerning the material fact is genuine.  *Id.*  All inferences and ambiguities must be viewed in the light most favorable to the nonmoving party.  *Rogoz v. City of Hartford*, 796 F.3d 236, 245-46 (2d Cir. 2015).

"In order to defeat a summary judgment motion that is properly supported by affidavits, depositions, and documents as envisioned by Fed. R. Civ. P. 56(e), the opposing party is required to come forward with materials envisioned by the Rule, setting forth specific facts showing that there is a genuine issue of material fact to be tried."  *Robertson v. Wells Fargo Bank, N.A.*, No. 3:14-cv-01861, 2017 WL 326317, at *7 (D. Conn. Jan. 23, 2017) (quoting *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996)) (internal quotation marks omitted).  "A plaintiff may not rely solely on 'the allegations of the pleadings, or on conclusory statements, or on mere assertions that affidavits

supporting the motion for summary judgment are not credible.'" *Id.* (quoting *Gottleib*, 84 F.3d at

518). In other words, "[w]hen the moving party has carried its burden under Rule 56[], its opponent

must do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party

"must present specific evidence demonstrating a genuine dispute." *Gannon v. UPS*, 529 F. App'x

102, 103 (2d Cir. 2013) (citing *Anderson*, 477 U.S. at 248). Such evidence must be admissible.

Allegations alone, without evidence in support of such allegations, are not sufficient. *Robertson*,

2017 WL 325317, at *7 (citing *Welch-Rubin v. Sandals Corp.*, No. 3:03-cv-481, 2004 WL 2472280,

at *1 (D. Conn. Oct. 20, 2004)). "Where there is no evidence upon which a jury could properly

proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed,

such as where the evidence offered consists of conclusory assertions without further support in the

record, summary judgment may lie." *Id.* (citing *Fincher v. Depository Trust & Clearance Co.*, 604

F.3d 712 (2d Cir. 2010)).

## II.     **Factual Background**

The following facts are derived from the parties' submissions pursuant to D. Conn. Local

Rule 56(a) (referred to herein as "Def. Local Rule 56(a)(1) Statement," "Pl. Local Rule 56(a)(2)

Statement," and "Pl. Addt'l Statement of Undisputed Facts"); uncontroverted deposition testimony;

the affidavits attached to the parties' submissions; and the exhibits attached to the parties'

submissions (respectively, "Def. Ex.," "Pl. Ex.," and "Reply Ex."). Docs. 31, 37, 40. The facts

recounted in Part II.A are undisputed or the opposing party has not presented any evidence to the

contrary in the record.[1]  The following factual background does not include facts not supported solely by the Affidavit of Lauri Canales ("Canales Aff.") submitted by Defendant that are not otherwise admitted.  Plaintiff has objected to that submission and the Court will address that objection in Part II.C.  All reasonable inferences have been drawn in Plaintiff's favor.

## A.  Facts Not In Dispute

Spyros Cope is a black man and a member of a protected class.  Pl. Addt'l Statement of Undisputed Facts ¶ 1.  As of December 8, 2007, and at all times relevant to the facts alleged in the Complaint, Wal-Mart employed Plaintiff as an assistant store manager at its Store #3547 in Norwalk, CT.  Def. Local Rule 56(a)(1) Statement ¶ 1.[2]  In April 2013, market manager La'Shion Robinson assumed responsibility for the store in which Plaintiff worked.  *Id.* ¶ 2.  The store manager at that time was Maxine Edwards.  *Id.* ¶ 3.  Both Ms. Edwards and Mr. Robinson are African-American.  *Id.* ¶ 2-3.  Robinson later placed Edwards on a performance improvement plan in May 2013.  *Id.* ¶ 4.  Robinson then terminated Edwards's employment approximately six months later in November 2013.  *Id.*  Jasmin ("Jazz") Noel, hired by Robinson and also an African-American, replaced Edwards effective on December 7, 2013.  *Id.* ¶ 5.

Wal-Mart has a comprehensive "Coaching for Improvement" policy, which establishes a

---

[1] The Court notes that Plaintiff has admitted to a number of facts in responding to Defendant's Rule 56(a)(1) Statement by not putting forth any evidence to challenge the facts and by only denying them or asserting that Plaintiff lacked sufficient knowledge to challenge such facts. *See, e.g.*, *Malick v. J.P. Morgan Chase Bank, N.A.*, No. 3:13-cv-669, 2015 WL 5797008, at *1 n.1 (D. Conn. Sept. 30, 2015) ("Where a party asserts a fact and the opposing party either fails to deny the assertion, or in issuing a denial, the party does not cite to evidence disputing its accuracy, the Court deems such fact admitted."(citations omitted)).  The Court accepts these facts as true in light of Plaintiff's failure to so challenge Defendant's Statement.  *See id.*

[2] For ease of reference, the Court cites to Defendant's Local Rule 56(a)(1) Statement where Plaintiff has admitted, or failed to properly deny, the undisputed facts asserted by Defendant in its Local Rule 56(a)(2) Statement.

progressive discipline protocol designed to address certain performance deficiencies and conduct related missteps. Def. Local Rule 56(a)(1) Statement ¶ 6. In May 2013, a month after Robinson became a market manager of Plaintiff's store, Edwards and Joseph Grasso, a co-manager at the store in which Plaintiff worked, issued to Plaintiff a First Written Coaching. *Id.* ¶ 7. According to the coaching form, Plaintiff failed to manage productivity on the overnight shift by neglecting to execute turnover notes flagging overstocked merchandise and failed to maintain basic store standards by ensuring that all features are priced properly and have the appropriate signage. *Id.*

Plaintiff was placed on a performance improvement plan by Noel in December 2013. Pl. Addt'l Statement of Undisputed Facts ¶ 4; Def. Ex. B (Cope Dep. Ex. E). About nine months after the first coaching, on February 17, 2014, Noel issued plaintiff a Second Written Coaching after Noel investigated and concluded that Plaintiff had acted unprofessionally in an altercation with an hourly associate. Def. Local Rule 56(a)(1) Statement ¶ 8. Just over a month later, Noel issued Plaintiff a Third Written Coaching on March 22, 2014. *Id.* ¶ 9. This coaching issued because, according to the coaching form, Plaintiff had: (1) failed to conduct a performance evaluation for an associate in a timely manner; (2) neglected to ensure merchandise was promptly unloaded from delivery trucks; and (3) paid inadequate attention to "SPARK," a daily process for monitoring perishable merchandise stored in freezers located in the food department. *Id.* The coaching form explained that the late evaluation and the daily execution of "SPARK" are compliance issues while the unloading schedule is a key metric on which the entire store as a whole was evaluated. *Id.* It is clear from the coaching forms that after three written coachings if an employee's "unacceptable job performance or conduct" warrants another level of coaching within the 12 months immediately preceding the unacceptable job performance or conduct, then the employee will be subject to

termination. Def. Ex. B (Cope Dep. Ex. B) at W-00019.

Important to this action, Wal-Mart maintains an "asset protection policy" known as AP-09, which sets forth certain guidelines for dealing with suspected shoplifters. Def. Local Rule 56(a)(1) Statement ¶ 10. Plaintiff, like other Wal-Mart employees, received training on this policy and felt that he had a "full grasp of its requirements, as was his obligation as an assistant manager." *Id.* On April 12, 2014, Juan Baez, an asset protection associate at Plaintiff's store, radioed for Plaintiff requesting assistance with the active investigation of a suspected shoplifter in the store. *Id.* ¶ 11. Plaintiff, at Baez's directive, walked to the vestibule where customers exiting the store passed the register, and waited for the suspected shoplifter, a person known to Plaintiff as a recidivist shoplifter. *Id.* When the shoplifter came through the vestibule with a shopping cart containing store merchandise, Plaintiff stepped in his path and asked to see the shoplifter's receipt for the merchandise in his car. *Id.* ¶ 12. The shoplifter attempted to evade Plaintiff and continue on his way out of the store. *Id.* Plaintiff attempted to stop the shoplifter from doing so and a physical struggle ensued. *Id.*; Def. Ex. A (Cope Dep.) at 305:12-306:24. After the shoplifter calmed down, Plaintiff directed him towards the customer service desk to await Baez. Def. Local Rule 56(a)(1) Statement ¶ 13. Plaintiff obstructed the suspected shoplifter by standing in front of him and placing one hand on the desk and the other on a shopping cart, in effect creating a barricade, while the shoplifter was at the customer service desk. *Id.* The shoplifter again became agitated and sought to escape. *Id.* ¶ 14. He attacked Plaintiff, punching him the face three times before three Wal-Mart customers intervened and tackled the shoplifter to the ground. *Id.* The police arrived shortly thereafter. *Id.*

Wal-Mart's AP-09 Policy provides that Wal-Mart personnel are to immediately disengage once a suspected shoplifter becomes physical and that objects or equipment should not be used to

limit or control or block the suspected shoplifter's movements. Def. Ex. B (Cope Dep. Ex. M) at W-000023 ("If **at any point the Suspect or any other involved person becomes violent**, **disengage** from the confrontation, **withdraw** to a safe position and **contact law enforcement**."; "The use of any object or equipment to limit or control the movements of the Suspect or to block the Suspect from leaving the facility is not allowed." (emphases in original)). The AP-09 Policy also states that "If at any point the suspect or any involved person exerts physical resistance, [the employee is directed to] determine whether your next reasonable step is to disengage with the confrontation or move to an authorized detention method." *Id.*

After the alleged shoplifting incident occurred, Cope worked for three days despite suffering injuries from the incident. Pl. Addt'l Statement of Undisputed Facts ¶ 7. He then had to take three days off because of his injuries, namely a concussion that had resulted due to the physical confrontation. *Id.* ¶ 8. When Cope came back to work, he was asked to submit a drug test. *Id.* ¶ 9. When he asked Noel why he was taking the test, Noel stated that Robinson had ordered the test performed. *Id.* ¶ 11. On April 24, 2014, twelve days after the incident, Wal-Mart terminated Plaintiff citing "misconduct with coachings." Def. Local Rule 56(a)(1) Statement ¶ 19. Plaintiff had been coached three times in a four month period in February, March, and April 2014. Pl. Addt'l Statement of Undisputed Facts ¶ 5; Def. Ex. B (Cope Dep. Ex. I & L). Prior to 2013 he had never received a single formal coaching. Pl. Addt'l Statement of Undisputed Facts ¶ 2.

Robinson was not involved in or consulted about the decision to terminate Cope's employment. Def. Local Rule 56(a)(1) Statement ¶ 20. The decision to terminate was made by Noel, in consultation with Stephen Ramirez, a market asset protection manager. *Id.*; Robinson Aff. ¶ 8; Reply Ex. A at 267:11-269:8. Noel determined that Cope's violations of AP-09 warranted

disciplinary action and because Cope had an active Third Written Coaching at that time, the next coaching level was termination in accordance with Wal-Mart's Coaching for Improvement Policy. Robinson Aff. ¶ 8. Noel informed Robinson of his decision to discharge Plaintiff after the fact. Def. Local Rule 56(a)(1) Statement ¶ 20.

Following his discharge, Plaintiff registered an open door complaint and spoke with Human Resources at Wal-Mart. Def. Local Rule 56(a)(1) Statement ¶ 21. An investigation was done and after review of the tapes, based on his misconduct, Plaintiff's termination was affirmed. Reply Ex. A at 267:1-4. According to Store #3547's EEO-1 reports, in 2014, 183 of 264 individuals employed at the store were black or African-American, or approximately 69%, and 24 were Caucasian, or approximately 9.09%. Def. Local Rule 56(a)(1) Statement ¶ 23. In 2015, 191 of the 288 individuals employed at the store were black or African-American, or approximately 66%, and 27 were Caucasian, or approximately 9.38%. *Id.* In 2013, when Robinson assumed responsibility for the store the assistant managers were: Sean Bell, Cherita Grant, Antoinette Gray, Kristin Hunter, Ruby Prince, Wesley Roberts, and Plaintiff, all of whom are African-American. *Id.* ¶ 24. Bell is the only remaining manager at the store. *Id.* ¶ 25. Other than Plaintiff and Prince, the other assistant managers have left Wal-Mart, or stepped down to a lower-level position, of their own volition. *Id.*

### B. Disputed Facts

The parties dispute whether Robinson ever made comments regarding the racial composition of the employees in the store. Plaintiff relies on the deposition testimony of himself, Edwards, and Hunter, a former assistant manager, to confirm these comments. Plaintiff testified that he had a "few discussions" with Robinson regarding race and recounted one that occurred prior to Edwards' termination (between April 2013 and November 2013). Pl. Ex. A (Cope Dep.) at 80:6-21. In that

conversation, Robinson stated that "there was too much African-Americans into [sic] the store. That is why the store is not running right. He said Caucasians is [sic] the face of the company. And we need to hire more Caucasians, because there is too much African-Americans in the store." *Id.* at 80:9-15. According to Plaintiff, several other assistant managers and a personal coordinator heard this conversation or other similar conversations. *Id.* at 80:22-81:8. Plaintiff also testified that Robinson followed up on his request and told Cope to try harder to hire more Caucasian associates. *Id.* at 92:13-93:21.

Edwards testified that all of the managers told her that Robinson had "asked [them] to hire more white candidates." Pl. Ex. B (Edwards Dep.) at 93:12-94:4; 115:14-19. Robinson also instructed her that they "should change the racial mix to fit our clientele." *Id.* at 95:1-4. Edwards recounted that Robinson mentioned the racial composition of the store numerous times. *Id.* at 113:21-114:3. Hunter testified at deposition that Cope had told her about his conversations with Robinson "about the fact that there were too many black people in the store and too many foreigners in the store." Pl. Ex. C (Hunter Dep.) at 29:8-17. She also testified that he said similar things to her. *Id.* at 30:15-24; 80:10-16. Hunter testified that to her knowledge Robinson never directed anyone to fire any non-white employees and replace them with white employees. *Id.* at 81:18-22.

Robinson disputes that these events occurred. He states in his Affidavit that he was "not involved in the hiring process for associates; that is handled by the assistant managers in conjunction with the Store Manager [Edwards or Noel]" and that he "did not instruct Spyros Cope, or any other assistant manager, to hire more Caucasian associates." Robinson Aff. ¶ 7. Plaintiff did not take Robinson's deposition, or the deposition of any other Wal-Mart witness including Noel, and did not submit any affidavits from any such employees. Doc. 40 at 6 n.2.

Plaintiff also asserts that when employees attempted to complain about Robinson's behavior,

they were discouraged or ignored.  Plaintiff relies on his deposition testimony and the testimony of Edwards and Hunter to support this assertion.  *See* Pl. Statement of Disputed Facts ¶ 4 (citing Pl. Ex. A (Cope Dep.) at 237:11-241:15, 245:4-246:16; Pl. Ex. B. (Edwards Dep.) at 103:15-14:14; Pl. Ex. C (Hunter Dep.) at 80:17-81:9).  Plaintiff recounts that Noel and Robinson were best friends.  Pl. Ex. A (Cope Dep.) at 90:18-91:19.

### C.    Objections to the Canales Affidavit

As stated earlier, the above recitation of facts does not include any facts not otherwise expressly admitted that are supported solely by the Affidavit of Lauri Canales, a market human relations manager for Wal-Mart, who investigated Plaintiff's internal complaint after he was terminated.  Wal-Mart submits the Canales Affidavit in support of this motion for partial summary judgment.

Plaintiff objects to Defendant's submission of the Canales Affidavit.  Doc. 37 at 21.  The Court will treat these objections as a motion to strike the Canales Affidavit.  Plaintiff challenges the Affidavit's admissibility on four grounds: (1) Canales's investigation and her notes were not disclosed during discovery and therefore Defendant cannot use this information pursuant to Fed. R. Civ. P. 26 and 37(c)(1); (2) the contents would not be admissible at trial because it violates the "Best Evidence Rule" (Fed. R. Evid. 1002) when it describes a video in paragraphs 7-9 and the video was not submitted with the motion papers; (3) paragraph 10 and the attached exhibits consisting of Canales's notes are inadmissible as hearsay; and (4) Canales offers conclusions that are improper and invade the province of the fact finder.   Doc. 37 at 21-23.  Plaintiff seeks to preclude the entire Affidavit from consideration and has objected to certain parts of Defendant's Local Rule 56(a)(1) Statement, where it relies in part or in full on this Affidavit to support its factual assertions.  *See id.*; Pl. Local Rule 56(a)(2) Statement.

Defendant responds by stating that Plaintiff admitted, or failed to deny and thereby admitted, all but two facts from Defendant's Local Rule 56(a)(1) Statement and that Plaintiff relies solely "on supposition about [D]efendant's motives rather than facts sourced in admissible evidence," and for that reason fails to overcome summary judgment. Doc. 40 at 1-2. Defendant then asserts in a footnote at the end of its brief that the Canales Affidavit should not be precluded from consideration because the failure to identify Canales in Defendant's Initial Disclosures was substantially justified and/or harmless. *Id.* at 10 n.5. According to Defendant, it's Initial Disclosures identified Sharon Burns and only after discovery had closed, in preparation for this motion, did Defendant discover that Canales had investigated Plaintiff's complaint regarding his termination. *Id.* Defendant asserts that Plaintiff was well aware of Canales's involvement in his termination and could have alleviated any concerns related to her investigation by filing a request pursuant to Fed. R. Civ. P. 56(d) to depose her. *Id.* Defendant also argues that Canales's notes are admissible and properly before the Court because they recount Plaintiff's own statements and are not hearsay, Fed. R. Evid. 801(d)(2)(D), or in the alternative, are business records, Fed. R. Evid. 803(6). *Id.*

Defendant conflates two separate issues in addressing the Canales Affidavit, or at least the facts put into the record by the Affidavit. Defendant is correct that if Plaintiff has not put forth admissible evidence sufficient to defeat summary judgment, then Defendant is entitled to summary judgment. However, that does not address Plaintiff's argument that the facts and allegations put forth in the Canales Affidavit are not properly considered a part of the summary judgment record at all. The Court must address that issue first before turning to whether Plaintiff has put forth sufficient support, if any, to defeat summary judgment.

In addition, it is true that if a party opposing summary judgment fails to support a denial of a fact with admissible evidence, the Court deems such facts admitted. *See Malick*, 2015 WL

5797008, at *1 n.1. Thus, the Court has accepted as admitted any facts that Plaintiff denies but does not dispute with evidentiary support. *See* Part I(A), *supra*. However, the Court does not regard as admitted those facts to whose admission Plaintiff objects. With regard to those particular facts, the Court must decide whether the Canales Affidavit is admissible, and consequently properly a part of this summary judgment record.

The following facts are allegations made solely based on the Canales Affidavit and not otherwise admitted to by Plaintiff:

Market asset protection manager Ramirez investigated Plaintiff's handling of the shoplifting incident by interviewing Plaintiff and reviewing two videotapes of Plaintiff's encounters with the suspected shoplifter captured on the store's security cameras. Def. Local Rule 56(a)(1) Statement ¶ 15. The first video showed the initial encounter between Plaintiff and the suspected shoplifter in the vestibule of the store. *Id.* ¶ 16. In that initial encounter, Plaintiff wrestled with the shoplifter to the point where Plaintiff pulled the suspect's shirt over his head. *Id.* In the second clip captured on video, the suspected shoplifter repeatedly punched Plaintiff at the customer service desk after Plaintiff put himself between a cart and the customer service desk to block the shoplifter's path. *Id.* ¶ 17. Canales, as noted a human resources manager for Wal-Mart, investigated Plaintiff's open door complaint. *Id.* ¶ 21. Canales reviewed the two surveillance video clips showing the shoplifting incident and interviewed Plaintiff. *Id.* According to Canales's contemporaneous notes, Plaintiff admitted that his actions were in violation of the AP-09 policy. *Id.* Canales, at the conclusion of her investigation, concurred with Ramirez's conclusion that Plaintiff had violated the AP-09 policy and agreed that the decision to terminate Plaintiff's employment was well-founded and consistent with Wal-Mart's policies and practices. *Id.* ¶ 22. In addition, attached to Canales's Affidavit are her notes of her interview with Plaintiff. Canales Aff. Ex. 1. These notes were not previously produced

in discovery.

As recounted above, Plaintiff argues that the entire Canales Affidavit, and attached exhibits, should be stricken from the summary judgment record because Defendant failed to disclose Canales's investigation and her notes in its Initial Disclosures or in response to Plaintiff's discovery requests. Defendant does not appear to contest that it failed to disclose Canales, her investigation, or to produce Canales's notes. Instead, Defendant states that "only after discovery closed and [when] defendant was preparing its summary judgment motion" did Defendant learn that Canales, directed by Sharon Burns (who Defendant had identified in its initial disclosures as the relevant Human Resources person) had investigated Plaintiff's internal complaint regarding his termination. Doc. 40 at 10 n.5. Defendant asserts that preclusion of evidence under Fed. R. Civ. P. 37(c)(1) would be inappropriate because the failure is substantially justified and harmless. Plaintiff was aware of Canales's role, and he could have alleviated any problems by filing a Rule 56(d) motion for leave to depose Canales or otherwise pursue discovery. Accordingly, Defendant argues its failure to disclose was harmless.

Federal Rule of Civil Procedure 26 provides that at the start of the case, parties must disclose

the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

Fed. R. Civ. P. 26(a)(1)(A)(i). Such disclosures must be supplemented as new information comes to light. *See* Fed. R. Civ. P. 26(e)(1)(A). Moreover, the Initial Discovery Protocols endorsed by the Judicial Conference Advisory Committee on Civil Rules were required to be used by the parties in this case. Doc. 10. Such protocols provide that a defendant in an employment discrimination lawsuit must produce to Plaintiff "[a]ll communications concerning the factual allegations or claims

-13-

at issue in this lawsuit among or between (i) the plaintiff and the defendant, and (ii) the plaintiff's manager(s), and/or supervisor(s), and/or the defendant's human resources representative(s)." Initial Discovery Protocols Part IV(2)(a).[3] The Protocols also require that the Defendant "[i]dentify person(s) the defendant believes to have knowledge of the facts concerning the claims or defenses at issue in this lawsuit, and a brief description of that knowledge." *Id.* Part IV(3)(c).

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Failure to comply with Rule 37(c)(1) is harmless when there is no prejudice to the party entitled to the disclosure." *Lebada v. N.Y.C. Dep't of Education*, No. 14 Civ. 758, 2016 WL 626059, at *5 (S.D.N.Y. Feb. 8, 2016) (quoting *Preuss v. Kolmar Labs.*, 970 F. Supp. 2d 171, 175 (S.D.N.Y. 2013) (internal quotation marks omitted), *overruling objections*, 2016 WL 8453417 (S.D.N.Y. May 16, 2016). "The intention of this preclusionary measure is to prevent the practice of sandbagging an opposing party with new evidence, and it applies on motions for summary judgment." *Pace v. Air & Liquid Sys. Corp.*, 171 F. Supp. 3d 254, 265 (S.D.N.Y. 2016) (quoting *Hooks v. Forman Holt Eliades & Ravin LLC*, No. 11 Civ. 2767, 2015 WL 5333513, at *4 (S.D.N.Y. Sept. 14, 2015)) (internal quotation marks omitted).

To determine whether exclusion is appropriate, a district court must consider "a nonexclusive list of four factors: (i) the party's explanation for its failure to disclose, (ii) the importance of the evidence, (iii) the prejudice suffered by the opposing party, and (iv) the possibility of a

---

[3] The Protocols also require the production of documents related to the termination, the plaintiff's personnel file, documents relied on to make the termination decision, documents relevant to any investigation done, and any relevant document to the defense. *See* Initial Discovery Protocols Part IV(2)(a)-(n).

continuance." *Id.* (quoting *523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600, 634 (S.D.N.Y. 2014))

(internal quotation marks omitted); *see also Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir.

2006) (quoting *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir.

1997)). The dilatory party has the burden to prove substantial justification or harmlessness. *Pace*,

171 F. Supp. 3d at 265 (citing *Schiller v. City of New York*, Nos. 04-cv-7921, 7922, 2008 WL

4525341, at *3 (S.D.N.Y. Oct. 9, 2008)).[4] However, courts have discretion to allow the evidence,

regardless of whether the non-disclosure is substantially justified or harmless. *Lebada*, 2016 WL

626069, at *5 (citing *Design Strategy, Inc v. Davis*, 469 F.3d 284, 297-98 (2d Cir. 2006)).

Moreover, "[d]espite Rule 37(c)(1)'s self-executing nature, courts have broad discretion in

determining whether and how to impose sanctions." *Preuss*, 970 F. Supp. 2d at 175 (citations

omitted). In fact, "[p]reclusion of evidence is generally a disfavored action." *Id.* (quoting *Am. Stock*

*Exch. LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2007)).

Applying the first factor, Defendant does not put forth a substantial explanation for its failure

to disclose or at least its failure to supplement its Initial Disclosures and production. The

explanation given is that Defendant had mistakenly identified the Human Resources market manager

in place at the time of plaintiff's discharge, Sharon Burns, as the one who investigated Plaintiff's

internal complaint. Doc. 40 at 10 n.5.[5] It was only after the close of discovery on either August 30,

---

[4] Neither party cites nor discusses the case law articulating or applying these factors. Defendant, by doing so, risked the exclusion of the Affidavit and evidence on this basis alone. *See Lebada*, 2016 WL 626059, at *6 (discussing how plaintiffs there had failed to address any of the case law articulating or applying these factors in opposition to defendants' request to preclude and stating that "[f]or this reason alone, the affidavits may be properly precluded"). Nevertheless, the Court will address each factor and determine the issue of preclusion.

[5] The Court notes that neither party has submitted Defendant's Initial Disclosures. However, the parties agree, and Defendant does not challenge, that Canales was not identified and her notes were not produced until Defendant's summary judgment motion.

2016 or October 7, 2016,[6] that Defendant allegedly learned that Burns had directed Canales to investigate the complaint, Doc. 40 at 10 n.5, and that Canales had information relevant to Defendant's motion. Presumably at that time Defendant also learned of Canales's notes regarding the interview. It is of note, however, that Canales signed and attested to Defendant's response to Plaintiff's Interrogatories, Pl. Ex. D, on July 1, 2016. Consequently, it is implausible to suppose that Defendant was not aware of who Canales was, as well as her connection to the case, prior to the initial close of discovery in August or the final closing of discovery in October after it had been reopened. Although it is true that Plaintiff also would have been at least aware of Canales given that she interviewed him, it is clear that Plaintiff was not aware of her name based on his deposition excerpts before the Court and Plaintiff's responses to Defendant's Local Rule 56(a)(1) Statement. Importantly, Plaintiff was also not aware of the existence of the notes, which according to the Initial Discovery Protocols should have been produced to him. Plaintiff was entitled to rely on Defendant's Initial Disclosures and productions as truthful and accurate regarding the actual Human Resources market manager involved in his case.

For these reasons, Defendant's failure to disclose is not absolved by the fact that Plaintiff knew to some extent about the existence of Canales. This case is sufficiently distinct from those where plaintiffs "were well aware of [the affiants'] identities and the scope of their knowledge." *Preuss*, 970 F. Supp. 2d at 177 (collecting cases) (admitting affidavits where the plaintiff had served document requests on the affiants and the affiants' names came up in multiple depositions and in

_____

[6] Discovery closed on August 30, 2016, Doc. 24, but was reopened at Defendant's request to depose Edwards and Hunter until October 7, 2016, Doc. 30. The dispositive motion deadline was then extended until November 4, 2016. Doc. 30. It is unclear, and never explained, whether Defendant did not realize Canales was involved or had relevant notes to its summary judgment motion until the close of discovery in October or August.

deposition exhibits). In any event, it does not appear that on this record, Plaintiff would have been at all on notice of the potential use of Canales as a witness or the potential use of her notes as evidence. *See id.* at 179-80 (excluding an affidavit where plaintiff did not know about a witness and never had a chance to depose the witness). In sum, Defendant's explanation for its failure to disclose, buried in a final footnote in its reply briefing, is wholly unavailing.

Turning to the next factor, the importance of the evidence, the Court cannot conclude that this evidence is of central evidence to Defendant's summary judgment motion, although it bears to some degree on some of Defendant's arguments. The majority of the legal arguments for summary judgment made by Defendant do not appear to rely on the Canales Affidavit or the facts asserted therein at all. Of course, there are arguments made by Defendant where this evidence is relevant and useful although it is largely duplicative of evidence already in the record or undisputed facts. For example, Plaintiff asserts that the entire context of his termination supports a finding of pretext in this context or at least a genuine dispute sufficient to withstand summary judgment. Doc. 37 at 12-13, 16-19. In reply, Defendant does rely on some of the detailed evidence offered by Canales to rebut such an argument. Doc. 40 at 7. This factor is at best neutral in the analysis.

Plaintiff has suffered prejudice because of the late disclosure of this evidence, especially given the statements recorded by Canales in her notes of the interview with Plaintiff. Without ever seeking to depose Canales, Plaintiff had no opportunity to question her investigation, her allegations, or her notes. It is true that Plaintiff could have sought to alleviate this harm and prejudice by, among other things, filing a full Rule 56(d) motion, but that does not alleviate Defendant's duties to disclose under Rule 26(a) or to supplement such disclosures under Rule 26(e). It is no excuse for Defendant's failure to timely disclose Canales's role and her notes that Plaintiff had such means of redress. If that were true, then affidavits would never be excluded at the summary judgment stage for failure

to timely disclose, but they have been repeatedly so excluded. *See, e.g.*, *Preuss*, 970 F. Supp. 2d at 179-80 (excluding affidavit at summary judgment). Moreover, in order for Rule 26 to have some meaning, then there must follow consequences for a failure to abide by the rule.

Finally, the Court addresses the fourth factor—the possibility of a continuance. Discovery ended nearly eight months ago and a month prior to the filing of Defendant's summary judgment motion. Prior to the final close of discovery, the Court had already reopened it at the request of Defendant. Plaintiff seeks only exclusion and does not request a continuance to take additional discovery of Canales or to seek any additional documents. Given that discovery closed months ago after being reopened already at Defendant's request and that Plaintiff does not seek any continuance, the Court does not believe a continuance is warranted or would be beneficial here. The parties have fully briefed this motion and the majority of the arguments made and the issues presented do not center on the evidence offered by Canales.

Applying the appropriate factors, it appears to the Court that the failure of Defendant to timely disclose Canales and/or produce her investigation notes was not "substantially justified or harmless." Defendant has not proven either of these in this instance, and thus, has not met its burden. Thus, this Affidavit and the notes attached thereto must be excluded.[7] The Court recognizes that this is generally disfavored, but given that the testimony is not particularly important and that Defendant failed at all to justify its failure to disclose Canales and produce her notes, the Court believes the exclusion is warranted. However, if Defendant wishes to rely on any notes or testimony from Canales for trial, then Defendant may do so but must also produce any relevant documents

---

[7] The Affidavit is excluded; however, in responding to Defendant's Rule 56(a)(1) Statement, Plaintiff expressly admitted to several facts supported only by the Canales Affidavit. *See* Pl. Local Rule 56(a)(2) Statement ¶¶ 23-25. Such facts have been considered by this Court accordingly to be undisputed and will be considered part of this summary judgment record.

from Canales and produce her for deposition prior to trial.[8]

## III.    Discussion

"Connecticut statutorily prohibits discrimination in employment based upon race, color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disorder, mental . . ., and learning disability or physical disability" pursuant to General Statutes § 46a-60(a)(1), which is part of the CFEPA. *Levy v. Comm'n on Human Rights & Opportunities*, 236 Conn. 96, 102 (1996) (citing Conn. Gen. Stat.§ 46a-60(a)(1)).  Plaintiff's Count I claim alleges race-based discrimination in violation of this provision of the CFEPA.

Connecticut courts "look to federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both." *Feliciano v. Autozone, Inc.*, 316 Conn. 65, 73 (2015) (citations omitted).  This is because the state "legislature's intent, in general, was to make CFEPA complement the provisions of Title VII [of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. §§ 2000e, *et seq.*]." *Comm'n on Human Rights & Opportunities v. Echo Hose Ambulance*, 322 Conn. 154, 160 (2016).   As a result, such claims are analyzed using the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016) (applying the "now familiar burden-shifting framework" to analyze a claim under Title VII); *Feliciano*, 316 Conn. at 73 (applying the framework to state law claims in Connecticut).

Pursuant to the burden-shifting *McDonnell Douglas* framework, the plaintiff "must carry the initial burden under the statute of establishing a prima facie case." *Coltin v. Corp. for Justice Mgmt., Inc.*, 542 F. Supp. 2d 197, 203 (D. Conn. 2008) (quoting *McDonnell Douglas*, 411 U.S. at 802-04)

---

[8] Having concluded that the Affidavit is excluded entirely, the Court need not reach Plaintiff's other arguments arguing for the exclusion of certain parts of the Affidavit.

(internal quotation marks omitted); *see also Feliciano*, 316 Conn. at 73. After establishing a prima facie case, the burden "must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's [termination]." *Coltin*, 542 F. Supp. 2d at 203 (quoting *McDonnell Douglas*, 411 U.S. at 802-04) (internal quotation marks omitted); *see also Feliciano*, 316 Conn. at 73. If the employer rebuts plaintiff's prima facie case, "[t]he employee then must demonstrate that the reason proffered by the employer is merely a pretext and that the decision actually was motivated by illegal discriminatory bias." *Feliciano*, 316 Conn. at 73-74.

### A.    Prima Facie Case

"The burden of establishing a prima facie case is a burden of production, not a burden of proof, and therefore involves no credibility assessment by the fact finder." *Perez-Dickson v. City of Bridgeport*, 304 Conn. 483, 513 (2012) (quoting *Craine v. Trinity College*, 259 Conn. 625, 638 (2002)) (internal quotation marks omitted). To establish a prima facie case, "the plaintiff must show: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position; (3) the plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination." *Feliciano*, 316 Conn. at 73. "The level of proof required to establish a prima facie case is minimal and need not reach the level required to support a jury verdict in the plaintiff's favor." *Perez-Dickson*, 304 Conn. at 513 (quoting *Craine*, 259 Conn. at 638) (internal quotation marks omitted). "Direct evidence is not necessary, and a plaintiff charging discrimination against an employer is usually constrained to rely on the cumulative weight of circumstantial evidence." *Luciano v. Olsten Corp.*, 110 F.3d 210, 215 (2d Cir. 1997) (citing *Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir. 1991)); *see also Tolbert v. Smith*, 790 F.3d 427, 438 (2d Cir. 2015) (citing *Luciano*, 110 F.3d at 215).

Defendant argues first that Plaintiff cannot establish a prima facie case of discrimination.

Doc. 31 at 11-17.  Defendant alleges that there are no circumstances in the record before the Court that give rise to any inference that Plaintiff was terminated on account of his race.  *See id.*  Plaintiff responds by dispelling the notion that a person of one race cannot discriminate against another person of the same race.  Doc. 37 at 10-11.  Plaintiff then asserts that the sequence of events leading up to his firing combined with Robinson's statements gives rise to an inference of discrimination as a matter of law.  *Id.* at 11-13.  Finally, Plaintiff argues that the "cat's paw" theory of liability applies here and makes the fact that Robinson was not the person actually firing Plaintiff irrelevant.  *Id.* at 13-16.

In the case at bar, the parties appear to agree that Plaintiff can meet the first three elements of establishing a prima facie case.  Plaintiff is a member of a protected class; he was qualified for his position; and he was terminated, thereby suffering the ultimate adverse employment action.  The sole point of contention is whether Plaintiff has produced enough evidence, circumstantial or otherwise, sufficient to support the fourth element of the prima facie case: that Plaintiff's termination occurred under circumstances sufficient to give rise to an inference of discrimination.  The parties strenuously dispute whether Plaintiff has met its minimal burden in providing sufficient evidence at this initial stage in the *McDonnell Douglas* analysis.

In general, "an individual plaintiff may establish a prima facie case by 'showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under' Title VII."  *Young v. UPS, Inc.*, 135 S. Ct. 1338, 1354 (2015) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 576 (1978)).  Importantly, "[a]lthough a plaintiff's burden at this stage is 'minimal,' [plaintiff] must still point to some kind of evidence that would support an inference of discrimination, such as a supervisor's invidious comments about those in plaintiff's protected class, suspicious circumstances

leading up to the adverse employment action, plaintiff's replacement by someone outside the protected class, or evidence that a similarly situated man was treated differently." *Bispham v. Hartford Hospital*, No. 14-cv-1126, 2016 WL 5348566, at *11 (D. Conn. Sept. 23, 2016) (citations omitted); *see also Sassaman v. Gamache*, 566 F.3d 307, 312 (2d Cir. 2009) ("[A]n inference of discriminatory intent may be established by, *inter alia*, 'the employer's . . . invidious comments about others in the employee's protected group; or . . . the sequence of events leading to the plaintiff's discharge.'" (quoting *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F. 3d 456, 468 (2d Cir. 2001))).

As a preliminary matter, Defendant asserts that Plaintiff cannot establish this inference based on any evidence that similarly situated individuals were treated more favorably than Plaintiff. Doc. 31 at 12-13. Plaintiff initially advanced such a disparate treatment theory in his Complaint. Doc. 1 Ex. A ¶¶ 35-36, 41. However, the record before the Court is devoid of any such evidence, and Plaintiff appears to have abandoned that theory in his briefing responding to this summary judgment motion, *see* Doc. 37 at 10. Therefore, the Court concludes that Plaintiff has failed to establish an inference of discrimination based on any alleged disparate treatment. If such an inference is to be made, then Plaintiff must establish it through other means.

Plaintiff asserts that he has met his "minimal burden" in establishing an inference of discrimination based on Robinson's numerous invidious comments and based on the suspicious circumstances leading to Plaintiff's termination. Doc. 37 at 11-13. Accepting the truth of these particular factual allegations (as I am bound to do on this motion), and taking those facts in the light most favorable to Plaintiff, Robinson made numerous comments about the racial make-up of the staff. Robinson asserted that there needed to be more white employees hired, and instructed his assistant managers to hire more white employees. He followed up on his directions to hire such employees.

Robinson then fired a store manager, Edwards, and replaced her with one of his friends, Noel; both Edwards and Noel are black. Just prior to Noel's hiring while Edwards was still a store manager and subsequent to Noel's hiring, Plaintiff had several incidents that required coachings and ultimately led to his firing by Noel. It is undisputed that Robinson had no role in, and was not consulted about, the decision to terminate Plaintiff's employment. Such a decision was made by Noel who consulted with only Ramirez, an asset protection manager. Noel, however, appears to have been supervised by Robinson and Robinson instructed Noel to have Plaintiff submit to a drug test following the encounter with the shoplifter.

In order for any discriminatory comments to be considered evidence "of an intention to discriminate," there must be "a sufficient nexus [that] exists between the comments and the termination decision." *Weisenbach v. LQ Mgmt.*, No. 3:13-cv-01663, 2015 WL 5680322, at *11 (D. Conn. Sept. 25, 2010) (quoting *Graham v. Elmira City Sch. Dist.*, No. 6:10-cv-6645T, 2015 WL 1383657, at *6 (W.D.N.Y. March 25, 2015)) (internal quotation marks omitted). Without such a nexus, the "comments are merely 'stray remarks' which do not lead to an inference of discrimination." *Id.* (quoting *Brown v. AstraZeneca Pharm., LP*, No. CV 03 6166, 2006 WL 2376380, at *7 (E.D.N.Y. Aug. 16, 2006)) (internal quotation marks omitted). To determine whether the statements made by Robinson are probative of discriminatory intent with respect to Plaintiff's termination, this Court looks to: "(1) who made the remark . . . ; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark . . . ; and (4) the context in which the remark was made, (i.e. whether it was related to the decision-making process)." *Weisenbach*, 2015 WL 5680322, at *11 (quoting *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010)). "Generally, 'remarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker

was motivated by discrimination." *Vale v. City of New Haven*, 197 F. Supp. 3d 389, 400 (D. Conn. 2016) (quoting *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007)).

I am bound to accept that the remarks in question were made by Robinson, a Wal-Mart manager and supervisor. Regardless of Robinson's direct supervision or lack thereof of Plaintiff, Noel (Plaintiff's direct supervisor) was hired and supervised by Robinson in some capacity. *See* Robinson Aff. ¶¶ 4-5 (stating that he worked with Edwards, Noel's predecessor, terminated her employment and hired Noel). The remarks were not off hand comments made to a few associates; they were made by a supervisor to every single associate manager. The remarks were alleged to have occurred several times over some period of time after Robinson became a manager from April 2013 until Plaintiff's termination in April 2014.[9] The comments are clearly discriminatory in nature. They do not admit of a benign interpretation. Robinson directed managers to hire more white employees, presumably requiring them to not hire minorities for those positions, and Robinson took express issue with the racial composition of the store's employees as compared to its clientele.

The problem for Plaintiff, and a point the Defendant repeatedly makes, is that Noel, in conjunction with Ramirez, was directly responsible for Plaintiff's termination—not Robinson. The context of Robinson's comments matters as well as their relationship, or lack thereof, to the decision to terminate Plaintiff. On the record that exists before this Court, there is no evidence whatsoever that Robinson made any of these remarks to Noel; or that Robinson had any influence over, direct involvement or role in the decision to terminate Plaintiff; or that Robinson was involved in any way

---

[9] The timing of these conversations is not clear from the record before the Court. All that can be deduced from the evidence submitted is that the first alleged conversation between Plaintiff and Robinson occurred while Edwards was still employed, Robinson followed up on this conversation at least once with Plaintiff, and multiple conversations regarding the racial composition of the employees occurred between Edwards and Robinson while she was employed there.

with any of Plaintiff's prior coachings that led to his termination. The fact that Noel, and other supervisors, made the termination decision and each of the coaching decisions without input from Robinson is left wholly un-rebutted on the record before the Court.

The Second Circuit has long recognized "in the employment-discrimination context, that 'a Title VII plaintiff is entitled to succeed even absent evidence of illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias played a meaningful role in the [decisionmaking] process.'" *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 272 (2d Cir. 2016) (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 143 (2d Cir. 2008)); *see also Rajaravivarma v. Bd. of Trustees for Conn. State Univ. Sys.*, 862 F. Supp. 2d 127, 148-49 (D. Conn. 2012). Consistent with this, the Second Circuit has also recognized the application of the "cat's paw" theory of liability in Title VII retaliation cases. *Vasquez*, 835 F.3d at 272-73. Such a theory "refers to a situation in which an employee is fired or subjected to some other adverse employment action by a supervisor who himself has no discriminatory motive, but who has been manipulated by a subordinate who does have such a motive and intended to bring about the adverse employment action." *Id.* at 272.[10] It is well accepted that the "impermissible bias of a single individual can infect the entire group of collective decision makers . . . at least when the decision makers are overly deferential to the biased individuals' recommendations." *Rajaravivarma*, 862 F. Supp. 2d at 150 (citations and internal quotation marks omitted).

---

[10] Under the "cat's paw" theory of liability, a plaintiff must show that a supervisor performed an act motivated by discriminatory animus that was intended to cause adverse action and if that act is the proximate cause of the ultimate adverse employment action, then an inference of discriminatory animus can be made. *Rajaravivarma*, 862 F. Supp. 2d at 149-50. Thus, proximate cause is also an important element under this theory of liability that Plaintiff stresses in his briefing before this Court.

However, as demonstrated *supra*, on the record before the Court that is not what appears to have occurred. The only evidence Plaintiff offers as support for the fact that Noel was influenced by any discriminatory animus from Robinson is that Noel and Robinson were "best friends" and that Noel instructed Plaintiff, days after the shoplifting altercation, to be drug tested at the direction of Robinson. Although this shows that Robinson had influence or control over Noel and supervised him (a fact which Robinson himself implies in his Affidavit), it does not at all reveal Robinson's role in Plaintiff's actual termination. Instead, Plaintiff's termination was based on several coachings and the alleged violation of Wal-Mart's policies, all as determined by Edwards, Grasso, Ramirez, and/or Noel, without any discernible participation by Robinson. Thus, there is no evidence that describes or even demonstrates what role Robinson played in supervising Noel and how this could have led to at least some influence over Noel's coaching and termination decisions.[11] Plaintiff needed at least some evidence, circumstantial or otherwise, of any causal connection between Robinson's discriminatory animus towards Plaintiff and Defendant's termination of Plaintiff's employment by Noel. *See Feliciano*, 316 Conn. at 80; *Rajaravivarma*, 862 F. Supp. 2d at 149-50. Without that causal connection, then the inference of discriminatory intent cannot be made and Plaintiff cannot establish an employment discrimination claim against Defendant. *See Feliciano*, 316 Conn. at 80; *Rajaravivarma*, 862 F. Supp. 2d at 149-50. The record reflects that Robinson was not at all involved in Plaintiff's termination decision and Plaintiff has failed to rebut that fact, or demonstrate a genuine issue of this material fact, on the record before the Court.

Plaintiff asserts that it is a "classic issue of fact for a jury to decide" whether Robinson gave

---

[11] Plaintiff elected not to depose Robinson or any other Wal-Mart witness. Doc. 40 at 6 n.2. Of course, Plaintiff is entitled to make such strategic decisions in litigation. The Court makes this observation only to represent fully what was and was not presented before the Court on this summary judgment motion.

orders to Noel to fire Plaintiff. In theory this would be true, if the record furnished a factual basis for making the argument, but Plaintiff has not submitted evidence of any facts from which it could be inferred that Robinson gave those orders or sought at all to influence Noel's decision. All that is in the record before the Court are conclusory allegations and speculation unsupported by any evidence. In any event, it is left un-rebutted on the record that Noel's decision was reached in conjunction with Ramirez and affirmed by a subsequent human resources investigation. Plaintiff fails to explain how these people—acting independently from any influence by Robinson—also harbored whatever discriminatory animus Robinson might have felt. *See Rajaravivarma*, 862 F. Supp. 2d at 156-59 (discussing the effect of an independent investigation and concluding that no reasonable juror could find that the discriminatory acts of certain supervisors were the proximate cause of the adverse decision under the "cat's paw" theory). In short, even taking all inferences and facts in Plaintiff's favor, there is no evidence indicating that Robinson gave Noel orders to fire Plaintiff, or that Robinson in any way influenced the decision to fire Plaintiff.

At first blush, it may seem counterintuitive to conclude that where one of several supervisors, indirect or otherwise, of an employee makes racially insensitive and discriminatory remarks about black employees, and the plaintiff, a black employee, is subsequently terminated, the plaintiff's anti-discrimination claim does not survive the first stage of *McDonnell Douglas* analysis. But each case turns on its particular circumstances, and the courts do not sit as arbiters of social *politesse*. Cope's discrimination case fails because the record on summary judgment reveals the total lack of evidence to support a vital element of his claim: that Robinson's racial beliefs and attitudes, whatever they may have been, was causally connected to Plaintiff's termination. The record shows that Wal-Mart employed a multi-layered and tiered system of supervision and discipline. On the evidence before the Court, Plaintiff was terminated by other supervisors for different reasons. Plaintiff submits no

evidence *contra.*

In this totality of circumstances, I cannot accept Plaintiff's argument that the circumstances that led to his firing, in conjunction with Robinson's comments, are enough to support an inference of discriminatory animus resulting in his termination. Although Plaintiff was coached three times within four months of Noel's hiring, Plaintiff was previously coached by Edwards prior to Noel's hiring. Without this coaching by Edwards, Plaintiff would not have been subject to termination based on the number of coachings he had in a one-year period.[12] The circumstances also do not reveal that any of these coachings occurred because of Plaintiff's race or because of Robinson's desire to hire more Caucasian employees. Again, there is no evidence that Robinson was involved in any of these coachings or the decisions made by Noel. The facts that Robinson and Noel were "friends," and Robinson was a supervisor of Noel, do not without more support an inference that whatever animus Robinson felt for Plaintiff affected Noel in such a way as to influence Noel's decision to terminate Plaintiff.[13] Plaintiff argues around this by asserting that the timing of Plaintiff's performance issues and Robinson's and Noel's arrivals is enough to raise a genuine issue of material fact as to whether Plaintiff can establish an inference of discrimination. This "timing" is not enough given the full context of the termination decision. Again, all Plaintiff offers is merely speculation, unsupported by any evidence tying Noel's actions to Robinson's comments or Robinson's influence. *See Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) ("The nonmovant cannot escape summary judgment by vaguely asserting the existence

---

[12] Moreover, in general, the evidence also demonstrates that both Robinson and Noel were attempting to correct an underperforming store in that same time period. *See* Robinson Aff. ¶ 4.

[13] If this Court were to conclude otherwise, then every time a supervisor made discriminatory remarks it would support a plaintiff's prima facie case without regard to the context of the remarks and whether the supervisor was connected at all to the adverse employment decision.

of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture."(citations and internal quotation marks omitted)).

Although Plaintiff's burden is "minimal" to establish a prima facie case, Plaintiff must show that a discriminatory animus was somehow causally connected to his termination. *See Weisenbach*, 2015 WL 5680322, at *11. Plaintiff cannot do so based on the record existing before this Court.[14] It is more often than not that a plaintiff can show such an inference of discrimination by circumstantial evidence; however, a plaintiff has to offer more than mere conjecture and speculation as to the discriminatory animus taken in relation to the adverse action. *See Dugan v. CBS Broadcasting, Inc.*, No. 00 Civ. 8908, 2002 WL 338142, at *7 (S.D.N.Y. March 4, 2002) (holding that a plaintiff failed to establish a prima facie case and must "'not . . . rest on mere allegations or denials,' but rather . . . present admissible evidence demonstrating 'that there is a genuine issue for trial.' (quoting Fed. R. Civ. P. 56(e)). Plaintiff has not done so here. In the absence of any such evidence supporting an inference of discrimination, there is simply no basis in the record for the factfinder to conclude that Plaintiff's termination resulted from discriminatory animus.[15]

---

[14] Plaintiff relies on a statement made by the Court in a prior Ruling in the case that "Rather—accepting the allegations as true—Wal-Mart relied on the incident as a pretext to further its plan to eliminate black employees from its workforce. If true, Plaintiff's Count I for unlawful employment discrimination certainly lies." *Cope*, 2016 WL 3561847, at *5. The Court's observation was made only in the context of Defendant's motion to dismiss. It did not, and was not intended, to intimate any view of the Court relating to this eventual summary judgment motion, not yet filed, which was submitted only after completion of discovery conducted by both parties. The Court's earlier statement was made based solely on the allegations contained in Plaintiff's pleadings. The discovery conducted and facts revealed after the prior Ruling necessarily affect what Plaintiff has demonstrated or shown can be inferred on the current record before the Court with regards to the summary judgment motion.

[15] Plaintiff also asserts that his claim does not fail simply because both he and his supervisors are African-American and cites cases from other circuits and the Supreme Court for this proposition. *See* Doc. 37 at 10-11. Although Defendant's brief does appear to imply that, Defendant clarified in its reply briefing that this is not the premise of any argument that it is advancing, and even if it were,

## B.    Pretext

Even assuming that Plaintiff had demonstrated enough to establish a prima facie case, Defendant has proffered a legitimate non-discriminatory reason for Plaintiff's termination.[16] The burden then shifts to Plaintiff to demonstrate that this legitimate reason was merely a pretext for firing Plaintiff. *See Jarnutowski v. Pratt & Whitney*, 103 F. Supp. 3d 225, 237 (D. Conn. 2015). Plaintiff must raise a genuine issue of material fact as to whether Defendant's stated legitimate reason is a mere pretext for discrimination. *See id.* More than conclusory allegations of discrimination are necessary to defeat summary judgment. *See id.* An employee's unsupported subjective belief that he was discriminated against is insufficient to establish pretext. *Id.* (citation omitted).

"A plaintiff may show pretext by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered reasons for its actions." *Nicholson v. Bd. of Trustees for the Conn. State Univ. Sys.*, No. 3:08-cv-1250, 2011 WL 4072685, at *7 (D. Conn. Sept. 12, 2011) (citing *Bombero v. Warner-Lambert Co.*, 142 F. Supp. 2d 196, 203 (D. Conn. 2000)). Generally "[c]ircumstantial evidence of pretext may include evidence of departures from procedural regularity, shifting explanations, or statistics." *Id.* at *8 (citation omitted). However,

---

it is entitled to an inference that discrimination did not exist because they are members of the same protected class. *See* Doc. 40 at 3 (citing *Younger v. Hanks*, No. 3:12cv1814, 2015 WL 540643, at *6 (D. Conn. Dec. 10, 2015)). The Court need not address whether this factors into the analysis in the case at bar, since Defendant has not relied on any such argument, and the Court has reached its conclusion without factoring that issue into the decision. Whether such an inference applies is a decision the Court leaves for another day and another case.

[16] Plaintiff does not appear to challenge the fact that Defendant fired Plaintiff for misconduct with coachings, in other words, for having four instances that required coachings resulting in his termination within a one-year period. Instead, Plaintiff argues that Defendant's reasons were "weak, incoherent, and contradictory," and consequently should be condemned as pretextual. Doc. 37 at 17.

"prior positive performance evaluations cannot, without more, demonstrate that later negative evaluations are pretextual." *Jarnutowski*, 103 F. Supp. 3d at 238 (collecting cases). As this Court has acknowledged, "performance that is deemed adequate for a long period of time can become inadequate in a changed economic climate, or following a shift in job responsibilities, or in the eyes of a different supervisor." *Id.* (quoting *Jensen v. Garlock*, 4 F. Supp. 3d 219, 223 (W.D.N.Y. 1998)) (internal quotation marks omitted).

Defendant argues that Plaintiff cannot demonstrate pretext on the record before the Court because it held an "honest belief" that Plaintiff engaged in the conduct warranting discipline and according to Defendant's policies Plaintiff's termination was required. Doc. 31 at 20-24. Plaintiff responds that he did not violate Defendant's policies related to the shoplifting incident, and even if he did, his conduct did not warrant termination. Doc. 37 at 17. Plaintiff does not address the other three instances that led to coachings and culminated in Plaintiff's termination, but does allege that the fact that he was coached three times within four months was an "effort to establish a track record to fire him." *Id.* at 18-19. Plaintiff also focuses on the fact that Defendant drug tested him six days after the incident to demonstrate that Robinson was looking for any reason to fire Plaintiff and replace him with white employees. *Id.* Plaintiff again emphasizes the timings of the coachings, asserting that such incidents did not occur prior to Robinson's and Noel's involvement in the store. *Id.*

Even assuming that Plaintiff is correct and he did not actually violate Defendant's policies,[17]

_____

[17] The Court notes that it appears, based on Plaintiff's undisputed deposition testimony, that Plaintiff may have violated the policy in his handling of the incident by not disengaging from the suspected shoplifter when he started to wrestle with him at the front of the store and when he, in effect, barricaded the suspect in the customer service area. Plaintiff's conduct led to a confrontation that involved three customers and good Samaritans, which the policy is specifically designed to avoid and prevent. Regardless, the Court will accept for purposes of this motion and Plaintiff's

Plaintiff has failed to show that Defendant's reasons for terminating Plaintiff were pretextual. *See Coltin*, 542 F. Supp. 2d at 204 (concluding that a plaintiff failed to demonstrate pretext). Merely showing that an employer's decision was wrong or mistaken is not enough to discredit the employer's proffered reasons for termination because "the factual dispute at issue is whether a discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent." *Id.* (quoting *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 331 (3d Cir. 1995)). Without at least some evidence that the termination was motivated by unlawful discrimination, the Court is in no position to evaluate or second guess Defendant's business decisions. *See id.*

Similar to the plaintiff in *Coltin*, this is not a case where the defendant has completely fabricated a reason for terminating Plaintiff. *See Coltin*, 542 F. Supp. 2d at 204. Noel and Ramirez conducted an investigation into Plaintiff's conduct. They independently concluded that he had violated Wal-Mart's policies and this required Plaintiff's termination because it was the fourth incident where he was "coached" in less than a year. The decision was reviewed and affirmed by Defendant's Human Resources department. Thus, it was not unreasonable for Defendant to believe that Plaintiff had committed a violation of Wal-Mart's policies in his handling of the shoplifting incident.[18] Plaintiff has not shown on this record "that a reasonable factfinder could rationally find [the proffered reasons for termination are] unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* (quoting *Brewer*, 72 F.3d at 331) (internal quotation marks omitted) (alteration in original).

_____

arguments, that Plaintiff can establish a genuine issue of material fact on this issue.

[18] The fact that only one other employee since 2009 has been fired for mishandling a shoplifting incident is not, without more, enough to establish pretext in this instance. Plaintiff was not fired solely for how he handled the incident; he was fired because he had three prior coachings in less than a year and Defendant's policies required termination after four such coachings.

In any event, Plaintiff has adduced no other independent evidence that his termination occurred because of any wrongful discrimination. Even though Robinson made discriminatory comments reflecting to some extent discriminatory animus, Robinson had no role whatsoever in Plaintiff's termination. Noel independently, in conjunction with Ramirez, made that determination. Plaintiff, for the reasons explained in Part III(A) of this Ruling, has not shown that Robinson's discriminatory animus affected or impacted Noel's decision and, without more, the Court cannot impute that animus to Noel.

Plaintiff stresses again that the circumstances of the case warrant an inference that discriminatory animus on the part of Noel and Robinson caused or contributed to Plaintiff's termination. Plaintiff points to the "timing of Cope's discipline" arguing that because he was never coached or placed on a performance improvement plan before, the timing is an indication that Defendant was looking to establish a record to fire Plaintiff. Doc. 37 at 18. However, without more, the fact that Plaintiff received prior positive performance evaluations does not demonstrate that the later negative evaluations are pretextual. *See Jarnutowski*, 103 F. Supp. 3d at 238 (collecting cases). Here, it seems clear that once adequate performance could have simply been deemed inadequate in the eyes of a different supervisor, Noel. *See id.* In addition, one coaching occurred while Edwards was Plaintiff's supervisor.

Plaintiff also points to the fact that he was drug tested after the shoplifting incident. Doc. 37 at 18. The fact of the drug test, however, is not sufficient evidence that the reasons for Plaintiff's termination were pretextual or that Robinson was involved in Plaintiff's termination for misconduct with coachings. Plaintiff relies only on speculation and conjecture that the prior coachings and performance improvement plan were a means to document a reason to fire Plaintiff when in reality Defendant sought to fire Plaintiff because of his race. This is insufficient to defeat summary

judgment. *See Jarnutowski*, 103 F. Supp. 3d at 238; *see also Maraco v. Conn. Reg'l Vocational-Tech. Sch. Sys.*, 153 Conn. App. 146, 161 (2014) ("The failure of the plaintiff to submit any documentary evidence or to present any facts beyond mere allegations [does] not put into dispute the [defendant]'s recitation of the good faith basis for its personnel decisions and actions that affected plaintiff."), *cert. denied*, 316 Conn. 901 (2015).

In sum, there is an absence of evidence demonstrating that Plaintiff's termination based on his violation of Defendant's policies in conjunction with his past coachings was a pretext for his termination based on his race. Plaintiff has failed to establish a genuine issue of material fact on this issue. Thus, summary judgment would have to be granted in favor of Defendant, even if Plaintiff had established a prima facie case of discrimination (which, for the reasons stated, he failed to do). *See Jarnutowski*, 103 F. Supp. 3d at 238 (granting summary judgment in favor of a defendant where a plaintiff failed to establish that the reasons for termination were pretext).

## IV. Conclusion

Defendant's motion for partial summary judgment [Doc. 31] as to Plaintiff's Count I CFEPA claim for unlawful termination is GRANTED. Plaintiff's Count I claim is hereby DISMISSED. Plaintiff's Count IV claim (pursuant to Conn. Gen. Stat. §§ 31-51x and 31-51z) remains in this action. Consistent with the Court's prior Scheduling Order [Doc. 22], the parties are directed to file a joint trial memorandum in the form required by this Court's Standing Order Regarding Trial Memoranda in Civil Cases on or before **August 31, 2017**. The case will then be placed on the Court calendar as trial ready, with a trial date to be determined subsequently.

**It is SO ORDERED.**

**Dated: New Haven, Connecticut**
       **June 28, 2017**

                  */s/ Charles S. Haight, Jr.*
                **CHARLES S. HAIGHT, JR.**
                **SENIOR UNITED STATES DISTRICT JUDGE**